The Court now calls Case 116-898, People of the State of Illinois v. Barbara Chenoweth. Are you ready to proceed? Yes, Your Honor. You may. Good morning, Your Honors. May it please the Court, Counsel. I am Drew Meyer of the Illinois Attorney General's Office, and I represent the people of the State of Illinois. Your Honors, contrary to the appellate court's holding below, charges against the defendant were timely, because for purposes of 720 ILCS 5-3-6, or Section 3-6, the victim did not discover the defendant's offense before the matter was referred to the proper prosecuting officer, in this case, the Adams County State's attorney, and the offense, in this case, being financial exploitation of an elderly person. The appellate court's analysis suffers from two fundamental flaws. First, it is based on a misapprehension of the scope of the power of attorney that the defendant wielded to manage the victim's assets. And second, it failed to adhere to cardinal tenets of statutory interpretation. First, it misapprehended the scope of the power of attorney that the defendant wielded. The appellate court held a basic holding on its determination that the victim discovered the offense when she learned that the defendant had written checks that she had not individually authorized, and the defendant relied on the same argument below. But this rationale reflects a crucial misunderstanding of the power of attorney that the defendant wielded. The power of attorney explicitly allowed the defendant to write checks without the victim's authorization or knowledge. Thus, the victim could not have discovered the offense or any wrongdoing as a result of learning that the defendant had written checks without her individualized knowledge or authorization. The defendant has tacitly conceded that the appellate court's reasoning was flawed in this way, and now instead of arguing that the defendant discovered the offense because she learned about checks she had not individually authorized, the defendant now argues that it was apparent and obvious to the defendant that these expenditures were not for her benefit under the power of attorney that the defendant wielded. I.e., the defendant now relies on the notion that the victim knew that these expenditures were illegal. In specific, she relies on the assertion that the victim knew that these expenditures violated a provision of the short-form power of attorney by which the defendant gained her powers to manage the victim's assets. That prohibited gifts of the victim's property. But the record shows that the victim in this case didn't even remember signing the power of attorney, much less was she familiar with specific provisions thereof or able to discern violations of those provisions. Indeed, the record shows that the victim was generally unknowledgeable regarding her financial affairs and was unable to manage them at least as early as 2003 when she vested this power of attorney in the defendant. So, Mr. Meyer, is the real issue, or the only question in the case, the discovery of the offense mean the aggrieved person must know that the offense or a crime actually took place? Or is it sufficient that the person simply suspect or have reason to believe that the misappropriation of funds occurred? Your Honor, the relevant statutory language is the phrase discovery of the offense in 36. By whom? Oh, I'm sorry? By whom? By the aggrieved party or the victim in this case. And the discovery, well, in addition to the factual problem with the appellate court's holding that the victim had discovered this offense as a result of seeing checks that she had not individually authorized, the appellate court's analysis departed from the analysis of Pupil v. McGreal, which both parties agree provided the correct plain language analysis leading to the correct definition of discovery of the offense. So under McGreal, mere suspicion of wrongdoing is not enough to constitute discovery. And so the fact that there was suspicion of wrongdoing, Your Honor, was not sufficient to constitute discovery. McGreal, as a result of its plain language analysis, arrives at the definition of knowledge that a penal statute of the state has been violated to define discovery of the offense. So it requires knowledge of actual facts that support each element of an offense as it is plainly defined in the relevant statute. In this case, the statute is 720 ILCS Section 5-16-1.3, which defines financial exploitation of an elderly person. Elements of that offense, as plainly defined by the statute, are the defendant stands in a position of trust with the victim and then illegally uses the assets of the victim. The appellate court's analysis departed from the plain language of that statute by reading out of it the illegality element, thereby breaking another fundamental rule of statutory interpretation that a court cannot read out or impose conditions on the plain language of the statute that the legislature has not expressed. What evidence is there that the legislative intent is to protect the victims? Yes, Your Honor. Well, the very nature of this extended limitations period speaks to the intent. Section 3-5 provides the normal three-year statute of limitations. This provision protects those who entrust people who have been betrayed and provides for extended limitations period. Clearly, its function is to protect those people who are betrayed by people they trust most. Also, Your Honor, as we state in our brief, the general purpose of extended limitations periods such as the one at issue, and we cite 22 Corpus Juris Secundum Criminal Law Section 259 for this proposition, the general purpose of discovery tolling provisions such as this one to extend the limitations periods for crimes that are susceptible to remaining undetected for extended periods of time, in this case, because the victims trust their malefactors and are not wont to discern criminal conduct in their actions. So the line for sufficient suspicion has to be of the victim? Is that right? And it has to be, and you said it has to be, they have sufficient knowledge of the facts supporting each element of the offense? And then the statute begins to run? Yes, Your Honor. Well, there are two possible triggering events. One is if the victim or someone representing the victim discovers the offense. Discovery meaning, in this instance, as McGreal teaches, that the aggrieved party or the victim has knowledge that a penal statute of the state has been violated. Penal statute, of course, is itself defined by its plain terms in the code. And the second triggering event is in the absence of such a discovery. It is when the matter is referred to the proper prosecuting authority. So those are really the two triggering events. In this case, the appellate court held or found, and the defendant argues that the victim discovered the offense on December 5, 2008, when she became aware of expenditures that she had not individually authorized. I think the record and the law refute that assertion. And so the one-year extended limitations period then runs, because we have an absence of discovery by the aggrieved party, then runs from the time that the matter was referred to the state's attorney, which occurred on January 27, 2009, and the indictment against the defendant came down on December 21, 2009. So within one year of the matter being referred to the state's attorney. Mr. Meyer, discovery then of the offense cannot mean that the person had knowledge of actually the penal code violation or every element of the offense. Is that what you're saying, that the aggrieved had to have knowledge that the criminal code had been violated? Is that what you're saying? Isn't that a matter for the trier of fact? If there was some knowledge that the aggrieved thought there was something strange about all this, wouldn't the trier of fact, though, really decide that? Your Honor, the aggrieved party doesn't need to be familiar with the specific provision in criminal code that the defendant has violated, but she, in this case, must have knowledge of actual facts that support each element of the offense in retrospect for discovery of the offense to have occurred. That's what the plain language of the statute of section 3.6 demands. Nothing less. The offense is a term that is defined in the code as a violation of a penal statute. Therefore, discovery of the offense means knowledge that a specific penal statute, in this case financial exploitation of an elderly person, has been violated. And that offense is defined by its elements. Among them, in this case, the illegality of the use of the victim's assets. So, Your Honor, the victim doesn't need to know the criminal code by heart, but she does need to know. Or a person who has authority for her to accept that knowledge? I beg your pardon? Or the person who has authority for the aggrieved? Yes. Yes, Your Honor. So one of those two parties must have knowledge of actual facts supporting each element of a given offense. So, and in this case, the illegality of the use, an element of the offense, that the appellate court deemed unnecessary to know in order to discover the crime is not an esoteric concept. It is at the very heart of the offense. If the use is not illegal, then it's not an offense. So at this point, Detective Tom Sleason of the Quincy Police Department, who conducted this investigation, had not yet completed that investigation. And he had yet to interview the defendant. He had yet to interview the family who had bought the victim's house through defendant. And he simply had not gathered enough information to determine whether the defendant's conduct was illegal or not. This was due to the great breadth of the defendant's power of attorney, which gave her broad powers with no limitation to do a variety of things with the defendant's assets, including write checks on the victim's bank accounts, including remunerating herself for services that she rendered on the victim's behalf, including employing others. So the breadth of this power of attorney made it difficult to determine whether she had violated it. Let me ask you a question similar to the question that Justice Burke asked you. What is the standard of review here? We're discussing lots of facts here, who said what and that kind of thing. So what is our standard of review? You began by talking about statutory interpretation, but now you're talking about a lot of facts. You're right on there. And there are two distinct questions. One is the factual question of whether the defendant, I beg your pardon, the victim, knew the elements of the events on December 5, 2008, when she saw these expenditures that she had, admittedly suspicious expenditures, that she had not individually authorized. The second question goes to the flaw in the statutory interpretation performed by the appellate court, which is the appellate court holding that an aggrieved party does not need to have knowledge supporting every element of a given offense in order to discover it under Section 36. So the standard of review as to the statutory question is the NOVA. As to the factual question, the trial court heard all of these witnesses testify, heard Detective Leeson testify both at a hearing, a pretrial hearing on the defendant's motion to dismiss based on statutory limitations grounds and at trial, and determined that Detective Leeson's investigation had not uncovered facts sufficient to support a finding of discovery on December 5, 2008, again, before Detective Leeson had interviewed the defendant to get her side of the story. And the record shows, Detective Leeson's testimony was, that he still allowed for the fact before he interviewed the defendant on six days after the defendant and the appellate court believed that discovery occurred in this case. Detective Leeson allowed for the possibility that the defendant might have some legitimate explanation for these suspicious expenditures. So, in a rather long-winded answer to your question, Your Honor, there is a statutory question here that is de novo, and we would argue that the appellate court's holding clearly departs from plain language analysis of the relevant statutory language. Mr. Meyer, how does that conflict with McGrail then? Because in McGrail, the court held that the person with the legal duty to report the offense had sufficient knowledge when he completed, totally completed the investigation and then fired McGrail. You're right, Your Honor. The appellate court's analysis departs from McGrail in at least two important ways. One, McGrail performed a statutory linguistic analysis of two phrases in Section 36B, sister provision to the 36A, which is at issue here. The two clauses or phrases that McGrail analyzed were discovery of the offense, and both parties agree that its plain language analysis produced the correct definition of that phrase. McGrail also analyzed the meaning of person with a duty to report. Those were two distinct analyses performed by the McGrail court. The appellate court below conflated those two analyses, and as a result of that conflation, went on to erroneously distinguish McGrail from the current case simply by saying this case is distinguishable from McGrail because in McGrail, it was a person with a duty to report who did the discovering, and in this case, it was the victim who did the discovering, thereby violating yet another tentative statutory interpretation that by defining the phrase discovery of the offense differently in two subsections of the very same statute. So in the two different statutes, there's two different standards for whether it's a victim or the person who has the duty? Well, there should not be, Your Honor, and that was the mistake that the appellate court made. It did not treat McGrail's analysis of the relevant phrase, discovery of the offense, as a discrete analysis, which it is in McGrail. So absolutely, Your Honor, the phrase discovery of the offense should not have a different meaning depending on who does the discovering, and that's unfortunately the result of the appellate court's analysis below. Finally, Your Honors, in giving effect to the legislature's intent here, it's important to consider the purpose of the statute, which we discussed a bit before. The statute is designed to protect vulnerable victims who are betrayed by the people they trust most and to prevent the offenders from escaping justice by relying on that trust and abusing that trust and placing the onus on vulnerable, in this case, elderly, incapacitated victims to discern criminal offenses by the people they trust most in the absence of definitive evidence would utterly defeat the purpose of the statute and, in fact, would produce an absurd result, which, of course, is anathema to basic standards of dexterity interpretation. And with that, if there are no more questions. Thank you. Thank you. May it please the Court, good morning. Good morning, counsel. I'm Janine Terrence. I'm with the Fourth District's Office of the State Appellate Defender, and I'm here on behalf of Barbara Chynoweth, the defendant appellee in this matter, to request that this Court affirm the appellate court's order vacating her conviction. When Barbara Chynoweth's power of attorney for Ella Stathakis was revoked in September 2008, the victim here, Ms. Stathakis, knew that a theft had occurred. When the police were contacted in October 2008, Ms. Stathakis reported to them that her stepdaughter, Ms. Chynoweth, had misappropriated money from the sale of her home. She knew that she was a victim of a theft. When Detective Leeson, on December 5, 2008, informed Ms. Stathakis that Ms. Chynoweth had written checks from her account to Mark Twain Casino for cash to pay for Ms. Chynoweth's daughter's telephone bill and to pay for Ms. Chynoweth's utility bill, Ms. Stathakis began crying. She knew she was a victim of a theft. As early as September 2008, but certainly by the end of the day on December 5, 2008, Ms. Stathakis had discovered an offense occurred. Discovery of an offense is not defined by statute. In 1971, the First District Appellate Court in McGreal found that discovery meant gaining knowledge of or finding out that a penal statute had been violated. It reasoned that gaining knowledge or that finding out required more than mere suspicion, but it did not hold that every element had to be fulfilled. The Fourth District Court accepted McGreal's definition of discovery. It found that discovery meant the gaining of knowledge. But it also found that McGreal did not hold that an aggrieved person had to have knowledge. Another has fulfilled every element of an offense as defined by the criminal code. In McGreal, there were two issues, discovery of the offense and the duty of the person to report that discovery. In McGreal, the person who had the duty to report was the head of the department. And when that person gained the facts, gained knowledge of the facts that an offense has occurred, there was discovery. That occurred after there had been some investigation or gathering of facts for that head of the department. So here, the Fourth District Court looked to when the aggrieved person gained that knowledge and gained those facts. And because we have a situation where Mrs. Spathicus, the victim here, had personal knowledge of her own affairs, she necessarily didn't have to have an investigation. Financial exploitation of the elderly occurs when a person of trust illegally uses the assets or resources of that elderly person. The power of attorney held by Barbara Chenoweth does not authorize her to make gifts of property or to spend the money or resources in a manner that's not for the benefit of Mrs. Spathicus. So even though Mrs. Spathicus might not have known legally the terms of theft or the terms of fiduciary duty, she knew that she had money in her bank account from the sale of her home. She knew that that money was no longer there and Mrs. Chenoweth was the only other person that had access to that account. She knew that she was in a nursing home and the money had not been spent on those expenses. Mrs. Spathicus knew her home had been sold, so the money had not been spent on expenses related to her home or the upkeep of it. She also knew what she had received from Mrs. Chenoweth and she knew what she had received did not amount to what was missing from her bank account. In essence, she knew everything she needed to know that money from her account was spent and it was not spent for her benefit and met or fulfilled those requirements of violation of financial exploitation of an elderly person. So the victim, it's sufficient if the victim knows something's wrong. I think based on McGreal and based on the lower court's interpretation, there has to be more than speculation. There has to be more than just suspicion. There has to be something more than that and she had more than that. When she discovered her money was missing, she knew what she had received and it could not be accounted for. So she was aware of something quite a bit more than speculation or suspicion. Hence, the police were called. Mrs. Chenoweth was replaced as the holder of the power of attorney and eventually Mrs. Chenoweth was charged with this offense. Simply stated, she had enough information as early as September, but definitely when she found out where this money had gone to, she knew what had happened. Did she have to know, contrary to the explanations given by the attorney, in fact, that the money, that I think some of the money allegedly was stated to have been used to repay a daughter for doing some work in the house or doing, did she have to know that, in fact, that was false? I think that goes to proof of an offense and I don't think that she has to sit in the position of a trier of fact to determine whether the facts were sufficient to prove out the offense. Would you, I think the state said that the broader the power of attorney, the less counting the agent, in fact, has, makes it more difficult for the victim to ascertain if there's been a misappropriation of funds. How would you address that? The extended statute of limitations in this case is directed toward theft or breach of fiduciary duty. The legislature included that language, discovery by an aggrieved person. To find that the aggrieved person could not discover, because of the complexity of the fiduciary duty relationship, that an offense has been committed is contrary to the basic tenets of construction. Because there would be no need to include that language, discovery by an aggrieved person, if the aggrieved person has to have some specialized legal knowledge before they can understand that this spending just doesn't meet the requirements of a power of attorney. Ms. Estathakis was physically ill, and she did not know that she had signed a power of attorney. But she did know that she had money in her bank account, and she did know it was missing. And she did know that she received no benefit that would amount to that amount of money that was missing from her account. So although she did not know the legal technicalities or procedures, she knew that she was a victim. Does it matter in this case if this is a durable power of attorney? I don't think that it does, given that the money could only be spent for her benefit. And here the aggrieved person has that personal knowledge of whether they've received some benefit. And this is similar to me. After leaving home, you've locked your door. You return home, the door is ajar. It's been broken open. Your valuables have been taken. You have discovered an offense. You may not know whether it's robbery or burglary under the law, but you know that you're a victim. Later it may be discovered that your spouse forgot their key, entered the house, took a laptop, and some other valuables. So maybe a crime has not been committed because there is a defense to it. But just because there is a defense to it doesn't mean that the crime hasn't occurred. And in this situation, you have an aggrieved party who should not be required to have specialized legal knowledge or to go out and find an attorney to give them advice to determine whether or not they're the victim. When she knew that she had something, she no longer had it, and she knew who had taken it, and she knew that she had not received any benefit from it. We're asked to determine whether this was filed within the period of the statute of limitations, and that was part of the charge, was it not? Yes. Was that, and I don't recall this from reading the briefs, was there a factual finding by the trier of fact as to whether it was timely filed? So does this become a factual question as opposed to a legal? In that regard, it's partly a factual question. But the argument that was made in the appellate court was that they failed to allege the correct exception. Before the prosecutor's awareness becomes the point at which the statute begins to run, there has to be no discovery by an aggrieved person or no discovery by a person with a legal duty to report. And in this case, there was discovery by the aggrieved person as early as September, but definitely no later than December 5th, the date that the appellate court decided was the date of discovery, because at that date, the aggrieved person was aware of all of the facts that an offense had occurred. The state contends that it would be contrary to the basic tenets of statutory construction to allow there to be some determination that discovery occurred in this case by the aggrieved person. I argue the contrary. The state, in essence, wants this court to find that before an aggrieved person can discover an offense, they would have to have specialized legal knowledge. And that's just simply not the case. The legislature would not have included the language discovery of an aggrieved person in a statute designed to extend the statute of limitations when there is theft through the breach of a fiduciary duty if they did not believe that the aggrieved person could discover an offense. It would make it meaningless. And in this case, there is just no conflict between the 4th District decision and McGreal by the 4th District's rejection of the state's argument below that every element of the offense had to be fulfilled or the aggrieved party would have to have knowledge that every element was fulfilled before there is discovery. It would just render that language meaningless. And if there are no other questions by the court, I would ask that you affirm the appellate court's order vacating the connection. Thank you, Counsel. Your Honor, briefly, to respond to the defendant's arguments. The defendant sets up a straw man when she insists that the state would require a victim to have specialized legal knowledge in order to discover the offense within the meaning of Section 3.6. That's not what we're seeing at all. In fact, that was a subject matter of our conversation, Justice. The victim, in order to discover the offense, does not need to know the technical limits of the law. What she does need to know are actual facts that support every element of an offense. If she only knows some facts that support some elements of the crime, I should say some elements of an offense, as is defined in the criminal code, she has not discovered the offense. She needs to have knowledge of actual facts. Not that she knows that they fulfill a specific statutory provision, but she needs to have knowledge that would fulfill each element of the statutory provision in retrospect. In this case, that knowledge, the victim did not have that knowledge any time before the matter was referred to the state's attorney on December 27, 2009. So again, it doesn't require the victim to have special legal knowledge, it just requires the victim to know facts. And those facts, in retrospect, under legal analysis, have to support each element of the offense at issue. And it's not too much to ask a victim to know facts. Second, defendant's argument tellingly relies on imputing knowledge to the victim that she just simply didn't have. When the West Central Illinois Area Agency on Aging, who had succeeded the defendant as a power of attorney for the victim, contacted Detective Leason of the Quincy Police Department in October of 2008, they didn't know whether these expenditures were illegal or not. They had the raw withdrawals and credits to the bank account in question. They did not know what these withdrawals and credits were from or for. And that's why they turned to Detective Leason to determine whether these were proper exercises of the power of attorney or not. So, and Detective Leason, after interviewing the defendant, after looking at the more specific bank records that showed where these monies had gone, interviewed, still entertained the possibility that the defendant might have legitimate explanations for these uses of the victim's assets. As I mentioned earlier, her power of attorney gave her broad authority to manage those assets in a variety of ways, including paying herself, including paying other people. And it was not until Detective Leason's investigation had sussed out the truth that there was knowledge of illegality of the use of these assets. So, Mr. Meyer, let me ask you this. If Detective Leason took another year to investigate, to get the answer to those questions you posed, it would still be timely? Yes, Your Honor. And this is another teaching of Magrillo, is that discovery happens when an investigation has concluded, such that sufficient knowledge of, again, the elements of the offense, in this case the illegality of the expenditures, has been determined to a reasonable degree. And actually, just as a point of fact, Your Honor, the state moved expeditiously in this case. Detective Leason's investigation continued, actually, after the indictment was filed. So as soon as Detective Leason had determined that there was a sufficient quantum of factual evidence through his investigation that these monies had been spent illegally in violation of the power of attorney, he referred the matter to the state's attorney. But yes, Your Honor, if the investigation doesn't uncover sufficient knowledge of the crime for a year, then it doesn't uncover sufficient knowledge of the crime for the discovery of the offense. Mr. Meyer, based on Justice Kilbride's question, that precludes the victim's knowledge that she felt that she was already being a victim. If you have to wait for the official criminal investigation to conclude, then what the victim's knowledge is doesn't mean anything. Oh, I understand, Your Honor, and thank you for allowing me to clarify that point. That's certainly not what I'm saying. If the victim comes to sufficient knowledge of facts supporting the elements of the offense, then she has discovered it, regardless of what is transpiring in a parallel investigation in this case. But what we have here is a victim who had suspicions. Indeed, she began crying and was upset when she saw the evidence of these suspicious expenditures. But McGreal is very clear that suspicion does not equal discovery. Knowledge is required, knowledge of wrongdoing. And contrary to defendant's insistence, the victim in this case did not have a firm handle on her financial affairs. Soon after her husband died in 2003, March 2003, she transferred management of her assets to the defendant. In 2004, her infirmities forced her to enter a nursing home. If you'll read the transcript of her evidence deposition, she really doesn't have a very clear idea of any of these aspects of her financial life. In fact, she didn't even remember signing the power of attorney that the defendant was exercising. One other question about the statute. Is there some concern here of how long could this investigation go on at some point? But there is a language that is a statute of repose in the statute, correct? However, in no such case is the period of limitation so extended more than three years beyond the expiration of the period otherwise applicable. So no matter what happens in between, there is an end to this. Yes, Your Honor, and I appreciate your noting that. That's exactly right, Your Honor. So there is a backstop. So the state has to make a determination at the outset of whether or not the victim has discovery to indicate to the investigator, hey, you better get your investigation done by such and such a date so we decide whether to prosecute or not? You know, I think the state has to be aware of the progress of the investigation and if it intends to use this extended limitations period under 3-6, should be aware of, as much as it can be, of what the aggrieved party or the representatives of the aggrieved party knew and when they knew it. So that knowledge, I think, would be charged to the state responsibility for that. Because you could have a situation, right, where there might be enough there for us to come to the conclusion that the victim did discover, but maybe the state wants more with respect to their prosecution and would have to tell the investigator, you know, you've got to get this job done a little quicker. Sure, Your Honor. Yeah, the discovery by the victim is a parallel triggering event to whatever the state is doing to investigate the crime. Yes, Your Honor. But in this case, the record is very clear that at a certain point, the victim simply in September when she transferred her power of attorney, she just didn't know what had happened to her money. And the West Central Illinois Area Agency on Aging didn't know either,  and all the way to December 5th. She had not talked to the defendant to see if this had been a legal exercise of her power of attorney, which, of course, was very broad. Detective Leeson had not determined at that point whether there was illegality of the exercise of the power of attorney. And I see that my time is up. We would ask the court to reverse the appellate court and reinstate the defendant's conviction in sentence. Thank you. Thank you. Case number 116898, People of the State of Illinois v. Barbara J. Chenoweth, will be taken under advisement as agenda number four. Mr. Meyer, Ms. Terrence, thank you much for your arguments today. We'll excuse you. And Mr. Marshall, the Supreme Court stands adjourned until 9 a.m. tomorrow. Thank you.